In the fourth case, the one called 218-1053, Edith Schultz v. The River Shore of Naperville Condominium Association. On behalf of the Appellant, Ms. Maxine R. Greek-Bless. On behalf of the Appellee, The River Shore of Naperville Condominium Association, Mr. Peter J. Blackowski. Good morning, Counsel. Justice Jorgensen regrets that she cannot be here today. Since your arguments are recorded, she will of course listen to the arguments before participating in the decision. We're ready to hear you, Ms. Greek-Bless. Good morning, Your Honors. On behalf of myself, Maxine Greek-Bless, and my client, Edith Schultz, I'd like to take this opportunity to thank you very much for this chance to speak before you today. I appreciate your time and attention to this matter, as well as your interest in hearing argument on this matter. As you are aware, with the briefs that have been submitted to you, this action arises from Ms. Eva Schultz's slip-and-fall accident in the Common Area driveway of her condominium complex. In the court below and before Your Honors, so far the issues have been framed as a debate between a natural versus an unnatural accumulation of the ice on which Ms. Schultz fell, as well as the property owner's liability or lack thereof for that ice. Counsel, I have a question and a concern. Yes, Your Honor. In this case, how does the evidence show a causal connection between the defendant's actions in maintaining or negligently maintaining this drive area and the creation of an unnatural accumulation of ice? I'll address that, Your Honor, by indicating that we have testimony from the plaintiff, as well as other witnesses, who have indicated that at the time of Ms. Schultz's fall, the driveway was anything but what we think is a natural, as defined by the cases that we have, surface. It was not a smooth, level driveway surface that one normally expects to encounter when crossing a driveway. So you're saying the driveway itself was an unnatural... Condition. Condition. And I believe, as I would indicate to this Court, that instead of focusing necessarily on natural versus unnatural, we have a deeper issue here. The issue that we have is that we have a dangerous condition that existed in this driveway for years prior to Ms. Schultz's fall, with years of notice to the defendant, with prior complaints by residents on the property regarding the condition of the property. And the condition itself is what imposes liability on the defendant, whether Ms. Schultz's accident happened on a beautiful, sunny July day or as it happened here on a cold, icy January day. So it doesn't matter whether she slipped on black ice or a piece of this pavement in the black area that she described, as far as your concern. I think our case plan, our case precedent, makes it very, very clear that a property owner remains liable for a dangerous condition on its property, particularly where they've had notice, particularly where they've had repeated opportunity to correct that dangerous condition, yet still do nothing. That's exactly the situation we have here. We have testimony from two property managers who managed the property from 2012 all the way until a year after Ms. Schultz's fall, who have testified that this property remained in that same condition. But year after year after year, they approached the property owner and said, we have to do something about this. There's a specific work order pointing to this driveway on the premises as being one of the worst that most required attention. There's a specific complaint from another resident that her vehicle was damaged because of the condition of the property. So did it matter then that there was no expert testimony regarding the slope of the driveway, let's say like in the McCann case, on which ice could accumulate in an unnatural condition? At the point that this matter was brought before the court on summary judgment, we had just completed party and F1 witness depositions. We had not proceeded into expert witness depositions, testimony, etc. So to answer your Honor's question, I don't believe that that's a critical issue in this case. I think we have a situation where you have a dangerous condition that has long existed on the property that could have posed a tripping hazard in July as opposed to a slipping hazard in January. You have testimony that the driveway was sloped. The residences sat well above where the garages were located for the premises. There was a long staircase that brought you down from the residence to the edge of the driveway. The driveway continued on a slope to the edge of the garage. Ms. Schultz testified, as did both of the property managers, that the driveway's condition at the time of her fall bore a wave-like pattern. It was not a smooth, natural surface like the Hancock Hall report tells us about. This was an unnatural condition in and of itself. You had peaks that rose above what would have been the flat surface of the driveway and valleys that fell below what would have been the smooth, natural surface of the driveway. The valleys themselves, Ms. Schultz testified, were up to 6 inches deep in locations. The peaks were enough that when there was a snowfall, the peaks were exposed above the surface of the driveway, above the ruts that had been filled in with the snow. So you have these high points that she was presuming were clear spots, were safer, were not covered with snow. Unfortunately, when she encountered one of these peaks in January, she encountered ice. It's not unusual to encounter ice or snowy conditions in January in northern Illinois. Did it matter that there was no data regarding the weather that was in the record as opposed to her testimony that it had snowed? We do have her lay testimony that it had snowed, that her fall was around noon at that time, and it was bright and it was sunny outside. Again, this motion was brought prior to her just proceeding through any sort of expert or additional testimony at this stage. So I think that her testimony alone is able to tell you what the weather conditions were like, what the condition was that she saw as she was walking along this driveway toward her garage. But again, I think the emphasis needs to focus on the actual condition of the driveway itself. We have cases from both our Appellate Court and our Supreme Court that tell us where there's a condition of the property that has been in existence long enough for a defendant to be aware of that condition. The property owner has an obligation to be cognizant of weather conditions, whether that might pose a slippery hazard if it's wet, whether it might pose a slippery hazard if it's icy, whether it may pose a hidden danger when snow would be covering a dangerous condition on one's premises. I submit to Your Honor that our premises liability case law is what should be the focus here, what should be imposing liability on this defendant for the long-existing dangerous condition of this parking lot. Well, again, the dangerous condition, though, in this case, was it not the ice and whether or not the... You've got plenty of evidence in the record about the condition of the parking lot. But the question really is whether or not the defective condition of the parking lot caused or contributed to the formation of ice on which your client slept, correct? That's correct, Your Honor. So, I mean, it's not just the parking lot. I mean, she didn't trip on a bump in the parking lot. Correct. So, I mean, we do have to look at these ice cases and whether or not the defective condition caused an unnatural accumulation. Correct. Similar to the McCann case. That's correct, Your Honor. And I would submit to you that this is a circumstance that's akin to the relatively recent case that came out of the 1st District, which is Mikens v. CPS Chicago Parking. That's a situation that reminds us again and again that we always have to look at the condition of the property, that we always have to be cognizant of both whether there's a condition of the property. In the Mikens case, there was a slope involved in the area where the plaintiff was walking, as well as this unnatural formation. Where there is some evidence presented where reasonable minds can disagree as to whether there was ice caused or contributed to be caused as a result of the unnatural condition, it must be submitted to the jury. Even the Mikens court said, we're not saying that the plaintiff prevails here. That's not for us to decide. This is a situation where you have sufficient facts, where the plaintiff has testified, as in Mikens, regarding a dangerous condition on the property that long existed with notice to the defendant, and then superimposed upon that, you have weather conditions that should be expected in northern Illinois in January. With that, that needs to be submitted to the ultimate trial. But where is the evidence that the unnatural condition, that the unnatural accumulation was caused by the defective condition, other than what you argue at page 19 of your brief, us taking judicial notice of things thawing and refreezing? As the plaintiff had testified, you have this unnatural condition, this wave-like pattern. She was able to cross from the base of the sidewalk, excuse me, from the base of the staircase that led to the driveway, until she encountered this first heap in the driveway. Everything was snow-covered at that point. There was no ice as she was stepping and making her progress almost a third of the way across the driveway. Once she encountered what appeared to be a clear area, her foot hit that clear area and split out from under her. It was a condition of black ice. Black ice forms when you have a snowy surface exposed to sunlight, which is precisely what happened with the piece on this property. That was the only portion of the driveway that was sitting above the snowpack. You had high noon on a clear, sunny, cold winter day, so you have this layer of ice forming on these peaks, which is exactly the hazard that Michelle is talking about. And that's what we're taking judicial notice of? Yes, please, Your Honor. That snowy surface, when exposed to sunlight, becomes black ice. Correct. At noon on a cold January day. And the only evidence is from your client, very cold. The only evidence of the condition that day is from, at this point, Ms. Schultz. Again, we have not gotten into expert discovery, expert depositions, expert testimony at the point that this motion was filed. That being said, because that testimony is coming from the plaintiff, because if it were coming from any witness, you would have to observe the witness's credibility, you'd have to observe the witness's ability to observe the conditions, to accurately describe them, to accurately account for them. Let's assume for a minute we believe 100% of what she said. It was noon on a sunny, very cold day. It had snowed the night before, and the area had not been plowed. Correct. How do we, are we able to take that logical leap that there was a thawing and refreezing when we have no idea what the temperature actually was? I think at this stage, you have to take that logical leap, solely for the purpose of presenting the issue to the ultimate buyer of fact. Our case law repeatedly tells us where there should be. I mean, this is circular. We're taking a leap on the ultimate question of fact so the buyer of fact can get to decide it? There has to be some evidence of it. We have to be able to find, you know, the trial court filed, there was no evidence of it. So, I mean, we have to be able to find that there's some evidence of it in the record to support going forward. So, I mean, you're asking us to take a leap so they can decide it, but we have to decide in the first instance whether there's enough there. And if there's nothing there, then it doesn't get to the trial of fact. I agree, Your Honor, and I disagree that there's nothing there. I do think under the case law, the precedent that we have when the court is weighing exactly this sort of issue, what testimony do you have, what witness is going to be offering you, what information to look at this, that's where we get into the situation where even if the plaintiff only has a bit of information to offer to the court, that requires a weighing of the testimony which is not permitted under a motion for summary judgment. And that was the entire focus of defendants' brief before, Your Honor, was a criticism of Ms. Schultz's testimony. It doesn't matter if it's just one witness that gives you that information that you would need to make a determination in the case. Oftentimes, a jury is required to believe the plaintiff or believe a defendant, and that's all the information that they have. When there is a situation like that, and reasonable minds can disagree on whether it shows that there's a question of the ICE formation or whether it shows that there's no question of the ICE formation, that still has to be a question that goes to the ultimate trial of fact, which is a fundamental principle in our motions for summary judgment. And I think that's the situation that we have here. Worth is purely a situation where we did encounter a smooth, level surface, a natural driveway, to use the words of our Honorable Court. It would be different. I don't know that I would be here before Your Honors. Because we have this situation of this dangerous condition of this driveway that has long existed for years before Ms. Schultz's fall, it does add that dimension. That question is raised regarding what role did the condition of the driveway play in forming the ICE that Ms. Schultz encountered. I think with that question presented to the Court, it must be allowed to proceed to the trial of fact. That's always been our case law as far as premises liability. A property owner has always had that responsibility to maintain their property in a reasonably safe condition, particularly where it's a means of ingress and egress, as we have here, people leaving their condominium building to enter their garage and vice versa. There is an obligation to provide that safe means of access. I submit to you that there's enough testimony in the record that this was not a safe means of access under any conditions, particularly when encountered in the wintertime in Northern Illinois. And that's exactly the circumstance that Ms. Schultz found herself in. I believe her testimony, as well as that of the property managers, clearly establishes the dangerous condition. And I believe that there is nothing that would absolve the defendant from the liability, again, as I said, regardless of the season. A property owner's responsibility doesn't change with the seasons. It remains. If anything, it's heightened with weather conditions when they should be cognizant of the possibility of snow or ice accumulation. There should be an extra layer of care taken to make sure that they're providing safe ingress and safe egress. That didn't happen here. This defendant, for years and years, permitted the property to exist and remain in its condition, so there's no question of notice to the defendant. Where that notice is present, our case law has clearly, our precedent has always been that the defendant is going to be held accountable. Counsel, is it common knowledge at what temperature snow begins to fall or melt or when ice at the point, I'm sorry, when snow begins to fall, when snow melts on the ground, and when ice begins to form? Those three. Is that common knowledge? Is that something, for example, we can take judicial notice of because it's so commonly known? I don't know that it's necessary for the court to have that level of common knowledge. I think it is sufficient to take judicial notice of the fact that snow falls in the winter in northern Illinois, and when that happens, a property owner does have some responsibility to making sure that their property does not pose an additional hazard to persons who might be on their property. So it didn't matter if there was ice here or not? I mean, I thought we were back focusing on the ice and the fact that the snow melted and then ice formed. And then we have the unnatural accumulation because of the dangerous condition, but I don't know that we're there yet with respect to the judicial notice that Justice Burke was talking about. And I understand Your Honor's point, and to a measure I agree with you because we are dealing with that being the condition that Ms. Schultz encountered. What I submit to the court, however, is if this had been a different circumstance, if she had, for example, let's say the snow had been deeper that day and everything was completely covered, and she had tripped over one of these peaks, had it been July, and she had tripped over one of these peaks, had she put her foot down in one of the ruts and twisted her ankle, we still have the same level of liability here. It is still a condition for which the landowner is responsible. He should have been cognizant of the hazards posed by that property, encountered by people who would be traversing this area to get from their home to their garage, vice versa. And the liability remains the same. Whether it's a situation that's icy, whether it's a situation that is slippery because it was raining. We have cases where it was merely a smooth level surface with a handicapped decal on the ground. The landowner was imposed liability there. We have situations, as I said, where had it been a tripping accident, had it been a situation where her foot had gone down into the rut and her ankle twisted, liability would remain. Merely the fact that this was an icy condition is simply another layer, but it's not the crucial layer here where you have a property that is in such a state as was present in this circumstance. And that's what I'm asking the court to focus on. The natural-unnatural accumulation law that we've built up in Illinois certainly is appropriate because we are in an open climate. We do have these circumstances. But that, both the liability for snow removal, the act, the statute that was passed with that, as well as the common law body of law that's built up in our present, precedent is just an over-layer to what has always been a landowner's responsibility to maintain their property in a reasonably safe condition. We submit to you that there is nothing reasonably safe about this property that Ms. Schultz encountered, that this would have imposed liability on the defendant regardless of the weather conditions. I think the buzzer went off. I'm going to ask an additional question. You'll have time on rebuttal. Thank you very much. Thank you. Mr. Zitkowski. Counsel, thank you very much for giving me this opportunity to speak with you about these issues worth being raised here on behalf of River Shore. I've thought all along this case, and I've been the one pretty much defending it on behalf of River Shore, has always been brought to the courts on a theory of an accident based on an unnatural accumulation of ice. That's been my understanding. I think it's been litigated up to the point of summary judgment under those concepts or that theory of prosecution, and I think it was also addressed by the trial court on that concept of prosecution. I don't recall this case really being prosecuted on a claim of a fall due to a dangerous condition of the property outside of snow and ice, as counsel is suggesting here. And I think the ruling by the trial court judge was based on the cases and the facts of this case addressing unnatural accumulation. So I'm not going to really talk about this underlying condition of the property to the extent that counsel had, because I don't think that's how this is being prosecuted. I think the plaintiff's case is very simple. Her case brought to this panel and also brought to the trial court was, I think I slipped on ice, although I didn't see it, and the condition of the parking lot was deteriorating, period. And then she takes this step and says, you must then assume or presume that what I fell on was unnatural and it was unnaturally caused by the property owner, the condominium association. The definition of black ice is that you can't see it. Correct. So, I mean, one could never, you assume that you fall on black ice. Black ice means it's ice that you can't see. I would agree. And I'd also point out another thing. We talk about natural versus unnatural accumulation. There's a word here that hasn't been discussed. It's the word accumulation. Mere fact that ice is on a surface doesn't necessarily prove there's an accumulation. In some of these cases counsel has cited and I have cited, the parking lot cases, you have testimony that the spot on which the plaintiff fell was two or three inches thick of ice. Here we have no evidence of, if you will, an accumulation. Well, counsel, I think it is common knowledge, is it not, that black ice needs to only be very thin for one to slip and fall on it. Well, we don't know. We don't have any. The point is there's a complete absence of testimony of accumulation. And at the same token, I think there's an absence of testimony as to that this is an unnatural accumulation. Well, I think counsel's point was that the unnatural part had to do with the peaks, the deteriorated condition of this driveway area that was peaks and valleys, and that it was unnatural because of that dangerous condition and the peak. So, again, it wasn't a flat surface. It became dangerous and unnatural because the black ice formed on this peak. As I understood her argument. Yes. And so how would you respond to that? Well, I think the case law states that if the sun or the weather asks to simply melt. Well, let me just step back. There isn't any dispute here of a fact. The only fact that we have from the plaintiff's mouth, there was snow on the ground. It had fallen the night before. It hadn't been plowed. There's no issue with that. There's no weather report brought by the plaintiff or anything to show the temperatures. But she did say it was sunny out. There are cases that say if the snow is on the ground, the sun comes out and melts it, or the temperature warms up to melt it and it refreezes, that ice that forms, it does not represent an unnatural accumulation. The courts have said it's still a natural accumulation of ice. Now, here, in this case, there's been no testimony that the plaintiff stepped into a rut, a depression. Something where you would commonly look at a surface where water would accumulate and someone who would form ice and fall. And courts have said when you get those situations where there's a rut, water, snow melts, and if it's a walking surface and you have a duty to clean it, we're going to consider that an unnatural accumulation. But that's not the case here. We have, if nothing else, whether they call it a bump or whatever you want to call it, and the trial court pointed this out, it's a raised surface. It's a surface where she stepped higher than the surrounding surface. So we don't really, I mean, it doesn't make sense, really, that that ice is unnaturally formed because melting water doesn't rise. And that was on the question the trial judge asked the attorney who presented the oral argument. She asked the attorney, well, how does this water rise from a lower level to a higher level? And he couldn't explain it. He just relied on the testimony of the plaintiff. So here, when you're trying to ask, well, then how did that ice form? A reasonable inference is simply that it's a natural accumulation, if at all, and I'm going to use the word accumulation in quotes, a natural accumulation caused by either the temperature or the sun bearing down on the natural accumulation of snow, melting it, and freezing it. And the law in Illinois says that type of ice does not constitute a natural accumulation. The property owner and or property manager. It would if it flowed down based on slope and then it created a puddle of ice. Absolutely. McCann is, you know, in all those cases, McCann and all the other cases that kind of surround its decision both before and after. I don't have any issue with that. So that's the argument, I think, of it, which is that this hull, which was defective condition, the ice wouldn't have been there but for the defective condition. But I don't know how. Because it would have, the whole park lot would have been covered with snow. But then how? I mean, and that's, there were, the question how, my question, is the same question the trial court explains. How did that happen and how was it caused? How do you attribute it to any action or inaction, if you will, by the condominium association? And there really isn't an explanation for that. I mean, you could have arguably melting snow at different places where there aren't necessarily humps or ridges or uneven surface levels. That could happen just by the way that the sun comes down, just the thickness. Snow doesn't fall evenly. It falls unevenly. And you could have places where the snow is a little lighter right next to places where the snow is really heavier. We've all kind of, that's common sense. I think we've all seen that. And maybe there's a lighter spot where the warmth just seemed to melt. But there isn't an explanation given by the plaintiff, either through expert testimony or weather reports or combination, that would give us an explanation as to how did that form. And so what that leaves us with is speculation. Then the ice that, if you take the evidence viewed in favor of the plaintiff and the strongest view favorable to the plaintiff, then there isn't yet an explanation as to that ice being caused unnaturally and you're left with, well, then it's a natural. But there simply isn't enough, there isn't any evidence. So then to say that it's unnatural is only based on speculation, guess, and conjecture, which isn't allowed even at the summary judgment level. Did the trial court conclude that the plaintiff fell on a flat surface, a flat surface area of the driveway? No, the trial just emphasized the fact that the plaintiff was stepping on a surface higher than the surrounding surface. And I think the trial court was trying to bring out the fact that the plaintiff didn't step in a rut or a depression where, as you pointed out, Judge, you know, melting snow could fall and perhaps that would be considered by the law, by the courts as an unnatural. She was saying to counsel for the plaintiff, arguing, how did that occur other than unnatural? Why can't that be considered unnatural? And if you've got inferences, I mean, just because you can have two different inferences that are opposite based on the facts, that doesn't create a question of fact. We don't have a question of material fact. We have a question of the plaintiff's version on how the ice formed versus the defendant's version. But the plaintiff has no support by expert testimony or weather reports to establish that that ice on which she fell was an accumulation and it was an unnatural accumulation. I don't see any cases of plaintiff's sites that show where they have uneven surfaces and the snow melts in that higher level surface with the court ruling, well, the ice on the upper level surface is unnatural. I don't see any of those cases in all the cases the plaintiff cited, including the 13 additional ones in the reply brief to this panel. I just don't see the case law addressing this unique fact pattern of the particular parking lot and the weather conditions that have all come from the words of the plaintiff. All of that evidence comes simply from the words of the plaintiff. I think in fairness here that the trial court's view of the evidence, looking at the evidence in the light most favorable to the plaintiff, establishes that the ice on which she claims she fell did not, was not present at that spot, at the very spot, through unnatural means. And therefore, it has to be by natural means. Because she walked. She had her testimony. But then wouldn't she be ignoring the condition of the driveway in order to make that finding, the peaks and valleys and waves?  Wouldn't she, following up on what you said, in order to conclude that, wouldn't she be having to ignore the condition of the driveway to make that finding? No. I don't think so. I don't think she is at all. I think what the trial judge looked at was what we argued, was when the trial court asked the arguing attorney, well, then how is that ice formed? And how is it formed by some action or inaction by the defendant? There was no answer. And so, since there isn't, you don't have an expert coming in here saying something about the slope or measuring these hump versus the surrounding area and coming up with either a scientific-based, well, scientific-based and fact-based, such as weather conditions. You don't have that accumulation of data that was put before the court so the court could look at something objectively. You just have the plaintiff's testimony. And so, since you just have that evidence, and the court did note that when the sun is out, snow melts, and I think that that is something that the court could take judicial notice of, basically what the trial court was saying is there isn't any evidence that the ice in which the plaintiff claims she fell occurred unnaturally. And the fact that it was a raised surface suggests that if there was the melting and refreezing of water into ice, it would have not been on the step in which she placed her foot. It might have been in a rut or some other place, which is a different fact pattern from what the plaintiff gave. So what the court is saying is based on the facts that the plaintiff produced at the prosecutor action, the ice in which she fell was most likely on natural accumulation, and there is no evidence of it being unnatural. And that's why the court ruled granting summary judgment and denying the motion to reconsider on that basis. And unless the court has any other questions, I've concluded my argument. Okay. Thank you very much, counsel. Thank you. Ms. Grief-Bless. I do have a question right off the bat. You know, counsel raised the point that I was actually thinking during your argument, and that is that reading everything in this case, all along I thought that the argument was and the theory was that the dangerous condition of the parking lot caused the ice, which caused an unnatural accumulation of ice, which caused the plaintiff's fall. You seem to be arguing today that the dangerous condition of the parking lot caused the fall. Are you arguing that? The plaintiff's complaint was brought arguing negligent maintenance of the common area of the driveway, and that negligent maintenance of the common area driveway, you've heard abundant testimony about this rising and falling, this peaks and valley condition. That is our complaint that's in the record at R14. So the court will be able to see that. I'm sorry, C14. So, yes, there has always been an argument that this is the dangerous condition of the premises that posed the hazard the plaintiff encountered. And as your honors correctly noted, and I would specifically direct your attention to two cases on Garrity v. Burr Oak Lanes, that's 5 Illinois 2nd, 153, were specifically a rough and bumpy parking lot that the court made note of when combined with the snowy condition created an unnatural condition. It was the condition of the lot itself that the court focused on in that case. Likewise, in Honcala v. Burger Chief, it was a rough and bumpy surface that the court focused on that was covered with snow. So they were looking at the snow. It was an area with no snow on it and presumably black ice. The driveway itself was covered with snow, but for these peaks rising above it. But it's clear that she fell in the air. She slipped and fell in an area that was uncovered with snow. Correct. Right. Correct. I mean, on page 19, you briefly talk about this judicial notice of a state denunciation. I mean, you say that the peaks exposed to light and air, particularly at noon, potentially caused the snow on the bumps to melt and refreeze, creating the black ice conditions. Now, when we talk about potentially causing, that doesn't sound to me like something that I can take judicial notice of. It's potentially causing that. But I believe you can, Your Honor, because as we've talked about black ice, and that was specifically the term that the plaintiff used in her deposition describing the condition that she encountered, you can have a very thin layer of black ice form on any surface that's exposed to sunlight. We've all encountered that. It doesn't have to be two inches thick to be dangerous or slippery. You have a situation where you have a surface area that is exposed to light and exposed to air, more so than everything that's blanketed and somewhat insulated by the snow. How does that turn into ice, though? I mean, if snow is snow, and then the sun beats down on it, and it melts. Correct. And the ground itself is hard frozen, so it's cold. So you have that melting. We're not saying that water rose, that somehow something came up from the ground to cover this peak. What we are submitting to the court is that you had a peak surface that had snow until the air and the sunlight melted that snow that was atop the peak, and that then began to run down this peak into what would have been the gullies that ran adjacent to the peak. It is precisely that condition that created the black ice from the hard frozen ground this January, after all. And that sunlight effect on whatever layer of snow would have been on top of it that is still blanketing the remainder of the driveway that created the ice on which Ms. Schultz fell. And I submit to the court that because of the unnatural condition of the driveway, our case law, and specifically Gary, imposes liability here. And that is liability that should be imposed upon the defendant regardless of the time of year Ms. Schultz fell. I also noted at pages 17 and 18 of your brief, I knew I'd seen this someplace, you indicate the court's conclusion that plaintiff fell on the, quote, and therefore provides a factually incorrect basis for the court's finding of a natural accumulation of ice. So that was the court's specific finding that she did not fall on a, one of these peaks, but rather just the flat part of the driveway? I believe, Your Honor, this is the record, and it's at page 32 of the record from the transcript of that hearing date. The court used the term flat surface. In doing so, as we stood before the court, what I recall her stating, and what you'll find in the record and what her premise was, was that we had a slightly sloping driveway condition from the building edge to the garage edge. And the sloping condition was marred by ruts. The judge thought of depressions from vehicles driving over the driveway surface all of these years. That's inconsistent with the testimony. We do have ruts, but the driveway surface was so broken that adjacent to the ruts, the driveway surface had been pushed up above what would have been the flat surface. I believe that the court ignored the fact that we're not talking about the flat surface of the driveway in the area where Ms. Schultz fell. There is flat surface of driveway near the stairway that takes you to the building. There is flat surface of the driveway near the garage entrances. This was directly in the middle of those flat surface areas, and you do have peaks that rise above the surface as described by Ms. Schultz and as confirmed by both of the property managers. That's throughout the record. So I believe the court's conclusion, and it's an important one, that Ms. Schultz had slipped on a flat surface is wholly incorrect, not supported by the evidence, and ignores the fact that the driveway condition itself was unnatural. And that is what we need to, under our case precedent, observe in this matter and impose liability on. Thank you very much. Thank you both for your arguments this morning. The court will take the matter under advisement and render a decision in due course. We stand adjourned for the day.